UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**DONALD LASSMAN, Trustee,**        )
                                    )
    **Plaintiff**             )
                                    )
    v.                       )    Civil Action No. 12-cv-10749-DJC
                                    )
**JEROME J. CRONIN, JR.,**          )
                                    )
    **Defendant.**            )
                                    )
_____ )

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                 September 16, 2014

### I.   Introduction

Donald Lassman, the trustee in a chapter 7 bankruptcy proceeding, seeks to avoid and recover certain alleged pre- and post- petition transfers made by the debtor to her husband, the defendant in this action. The trustee now moves for summary judgment and the defendant, Jerome J. Cronin, Jr., cross moves for summary judgment. The Court heard the parties on the pending motions and took the matters under advisement. D. 32. For the reasons stated below, the trustee's motion for summary judgment, D. 22, is ALLOWED in part and DENIED in part. The defendant's cross-motion for summary judgment, D. 25, is DENIED.

### II.  Facts and Procedural History

Marie E. Cronin (the "Debtor") commenced a chapter 13 bankruptcy case on April 13, 2009 (the "Petition Date"). D. 22-1 ¶ 3. Upon the Debtor's motion, the bankruptcy court converted her chapter 13 case to a chapter 7 case on July 29, 2010, and Donald Lassman (the "Trustee") was appointed trustee for the bankruptcy estate. Id. ¶¶ 7-8. The bankruptcy court entered a discharge in the Debtor's case and the case was closed on November 1, 2010. Compl.

¶ 8. Upon the Trustee's motion, the bankruptcy court reopened the Debtor's case on June 8, 2011. Id. ¶ 9. On December 12, 2011, the Trustee initiated an adversary proceeding against Jerome J. Cronin, Jr. ("Cronin"), the Debtor's husband, to recover property of the estate. D. 22-1 ¶ 9. On August 29, 2012, upon Cronin's motion, the case was removed to this Court. Id. ¶ 10.

At the time relevant to the pending motions, the Debtor and Cronin maintained two joint bank accounts from which the Debtor paid household bills and expenses: Account 2915 and Account 2273. Id. ¶¶ 14-20. It is undisputed that the Debtor engaged in three post-petition financial transactions without disclosing them to the bankruptcy court. First, on approximately July 28, 2010, the Debtor and Cronin sold their interest in a vacation condominium located at The Villas at Disney's Wilderness Lodge in Florida (the "Disney Condominium"). Id. ¶¶ 21, 23. The net proceeds of $11,455.40 were deposited into Account 2273 on August 24, 2010. Id. ¶ 25. The second transaction resulted from the sale of 300 Home Resort Vacation Points (the "Vacation Points") to which the Debtor and Cronin were entitled by virtue of their interest in the Disney Condominium. Id. ¶ 28. In June of 2009, the Debtor sold the Vacation Points for $2,700 and deposited that amount into Account 2273. Id. ¶¶ 29-30. During the course of her bankruptcy proceeding, the Debtor did not disclose her interests in the Disney Condominium and the Vacation Points, nor did she seek permission from the bankruptcy court to sell those interests. Id. ¶¶ 26-27. The third transaction arose from an automobile accident in August 2009 in which the Debtor was injured. Id. ¶ 33. The Debtor received a cash settlement for her injuries and, after paying her attorneys' fees and other expenses, she deposited the net proceeds of $48,308.99 (the "Accident Settlement") into Account 2273. Id. ¶ 37. The Debtor did not alert the bankruptcy court to her claim or seek its authority to procure a settlement. Id. ¶¶ 38-39.

The Debtor also made three pre-petition cash advances (collectively, the "Cash Advances"). In June 2008, the Debtor received an $8,000 advance on a Bank of America account and deposited the funds into Account 2915.[1] Id. ¶¶ 40-41. Approximately two months later, the Debtor took a $15,000 cash advance by signing a credit card convenience check, again depositing the funds into Account 2915. Id. ¶¶ 45, 47. Four months after that, the Debtor deposited a third cash advance on the Bank of America account into Account 2915, this time for $52,115. Id. ¶¶ 51-52.

Counts I, II and III of the Trustee's complaint seek to avoid post-petition transfers pursuant to 11 U.S.C. § 549. Specifically, the Trustee asserts that those transfers occurred when the Debtor deposited into Account 2273 the proceeds from the sale of the Disney Condominium and the Vacation Points and from the Accident Settlement. Counts IV, V and VI of the complaint seek to avoid pre-petition transfers pursuant to 11 U.S.C. § 548. Those transfers comprise the Cash Advances deposited by the Debtor into Account 2915. In Count VII, the Trustee seeks recovery of the avoidable transfers pursuant to 11 U.S.C. § 550.

## III. Discussion

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)). The burden of proof is on the moving party in the first instance. In re Wang Labs., Inc., 155 B.R. 289, 290 (Bankr. D. Mass. 1993). To defeat the motion, the opposing party must produce substantial evidence of a genuine dispute as to a material fact. Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763

---

[1] Cronin calls this a balance transfer from a line of credit the Debtor had with Bank of America. D. 25 ¶ 5. Whatever the correct terminology, the effect of the transaction is the same.

3

n.1 (1st Cir. 1994). A material fact is one that has the "potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

### A. *Whether there were post-petition transfers*

The Trustee asserts that there was a transfer of estate property to Cronin when the Debtor deposited into their joint account (Account 2273) the proceeds from the Accident Settlement and from the sale of the Disney Condominium and Vacation Points. The Trustee relies on 11 U.S.C. § 549 which provides that "the trustee may avoid a transfer of property of the estate (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court." Thus the Trustee must establish that there was (1) a transfer; (2) of estate property; (3) that was not authorized; (4) after commencement of the case. Grossman v. Madoff (In re Fadili), 365 B.R. 7, 14 (Bankr. D. Mass. 2007).

The latter three elements are satisfied here. The parties do not dispute that the Debtor deposited the proceeds at issue into a joint account she shared with Cronin. Those proceeds were estate property, satisfying the second element. They emanated from the Debtor's interest in the Disney Condominium, the Vacation Points and the Accident Claim -- all estate property. The third element is met because the Debtor was not authorized to sell the Disney Condominium or the Vacation Points or to deposit the sale proceeds into the joint account. Similarly, the Debtor did not attain authorization to settle her personal injury claim or to deposit the Accident Settlement into the joint account. All three deposits occurred after the Petition Date, and thus the fourth element is met.

The issue is whether the Debtor's deposits of the sale and settlement proceeds each constituted a "transfer," the first element required by 11 U.S.C. § 549. Cronin argues that "the

deposit by the wife of her funds into a joint bank account with her non-debtor husband is no transfer at all." D. 25-1 at 12. Cronin contends that the deposits merely converted the Debtor's property from an interest in cash to an in interest in the joint bank account. Id. But, because she never parted with dominion and control over the deposited funds, there was no transfer as defined by the Bankruptcy Code. Id. Invoking the definition of transfer discussed below, Cronin further asserts that the Debtor never "disposed of" or "parted with" "property" or "an interest in property" because Cronin never withdrew any money from the joint account. Id.

The Bankruptcy Code defines a "transfer" as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). What constitutes a transfer is a matter of federal law. McKenzie v. Irving Trust Co., 323 U.S. 365, 369-70 (1945). However, in the absence of controlling federal law, property and interests in property are interpreted in accordance with state law. Barnhill v. Johnson, 503 U.S. 393, 398 (1992). Massachusetts law provides that "[a]ny bank . . . may receive deposits in the name of two or more persons as joint tenants, payable to two or more persons . . ., and any part or all of the deposits and interest represented by joint accounts may be withdrawn, assigned or transferred in whole or in part by any of the individual parties." Mass. Gen. L. c. 167D, § 5. That is, either party to a Massachusetts joint bank account has the right to withdraw any part or all of the funds in the joint account. Heffernan v. Wollaston Credit Union, 30 Mass. App. Ct. 171, 177 (1991).

While the Debtor did not relinquish complete dominion and control over the sale and settlement proceeds when she deposited them into a joint account she shared with Cronin, she did part with an interest in estate property. Before she deposited the money into the bank account, she had unfettered control over the funds, but once the money was placed in the joint

5

account, her right to control the money was shared with Cronin. She in effect gifted to Cronin the legal right to withdraw or otherwise use the funds. Cronin received the right to withdraw all or some of the money deposited by the Debtor, even though he never exercised that right. No withdrawal was necessary to effectuate a transfer from the Debtor to Cronin. The transfer occurred by virtue of the Debtor's deposit into a bank account that, by law, permitted Cronin complete access to the funds. See Noonan v. Rauh (In re Rauh), 164 B.R. 419, 424 (Bankr. D. Mass. 1994) (stating that a transfer of property interest occurred when the Debtor created a joint account with his wife). The Court holds that the Debtor's deposits into the joint account were transfers, and thus the Trustee may avoid them pursuant to Section 548 of the Bankruptcy Code.

Cronin's reliance on Barnhill, 503 U.S. at 400, is misplaced given the material difference between the facts in that case and the circumstances presented here. In that case, the debtor made a payment for a *bona fide* debt to petitioner Barnhill. Id. at 395. The check was delivered on November 18, dated November 19, and honored by the drawee bank on November 20. Id. The debtor later filed for chapter 11 bankruptcy. Id. The bankruptcy trustee sought to recover the check payment as a transfer of the debtor's property made within 90 days of the bankruptcy filing. Id.; 11 U.S.C. § 547(b). If the transfer occurred on November 20, the date the check was honored, then it was within the 90-day period and recoverable by the trustee. But if the transfer occurred on November 18, the date the check was delivered to Barnhill, then the transfer fell outside the 90-day period. Barnhill, 503 U.S. at 395.

The Court held that the transfer occurred when the drawee bank honored the check. Id. at 400. When the petitioner received the check on November 18, he had no right to the funds held by the drawer's bank and thus no transfer had occurred. Id. at 399. "[U]ntil the moment of honor the debtor retains full control over the disposition of the account and the account remains

6

subject to a variety of actions by third parties." Id. at 401. The drawer could close its account or a third party might obtain a lien against it, both of which would cause the check to be dishonored. Id. at 399.

Barnhill, however, is distinguishable. Here, as soon as the Debtor deposited the funds into the joint account, she conveyed full control over the disposition of the account to Cronin. See Barnhill, 503 U.S. at 401. Although she maintained complete access to the funds, she now shared that access with Cronin who could also withdraw any portion or all of the money from the account. Cronin's interest in the joint account at the moment of each deposit was much more than the mere expectancy interest as there was with the deposit in Barnhill. Cronin had full, albeit shared, control over the disposition of the funds in the account upon their deposit by the Debtor. Cronin acquired far more upon the Debtor's deposit of funds into the joint account than the petitioner in Barnhill gained upon receipt of the debtor's check. The Supreme Court noted that Barnhill did not even have a conditional interest in the debtor's property because he had no right against the drawee bank or the debtor's account. Barnhill, 503 U.S. at 400-401. In contrast, Cronin had complete access to the Debtor's funds as soon as she deposited them into the joint account.

For these reasons the Court concludes that the Debtor's deposit of the funds from the sale of the Disney Condominium and the Vacation Points and from the proceeds of the Accident Settlement were transfers within the meaning of § 101(54) of the Bankruptcy Code. Thus, the Trustee may avoid the transfers pursuant to 11 U.S.C. § 549.

### B. *Whether Cronin was the initial transferee of the post-petition transfers*

Once a transfer is avoidable pursuant to Section 549, the Trustee's right of recovery for the bankruptcy estate depends on 11 U.S.C. § 550(a): "Except as otherwise provided in this

section, to the extent that a transfer is avoided under section . . . 548 [or] 549 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."[2]

Cronin argues that he was not the "initial transferee" of the deposits by the Debtor into their joint bank account. Echoing his argument with respect to the issue of transfer, Cronin asserts that he never had exclusive dominion and control over the joint bank accounts because he never exercised dominion and control. D. 25-1 at 16. Only by using the funds, Cronin argues, would he have deprived the Debtor of an interest in property and become a transferee of the money deposited by the Debtor. Id.

The term "transferee" is not defined in the Bankruptcy Code, and there is no legislative history from which to glean its meaning. Richardson v. United States (In re Anton Noll, Inc.), 277 B.R. 875, 878 (B.A.P. 1st Cir. 2002). This Circuit has applied the test set forth in Bonded Fin. Servs., Inc. v. Eur. Am. Bank, 838 F.2d 890, 893 (7th Cir. 1988). Id. at 880; accord Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52 (2d Cir. 1997); Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Props. Ltd. P'ship), 99 F.3d 151 (4th Cir. 1996); In re Video Depot, Ltd., 127 F.3d 1195 (9th Cir. 1997); Rupp v. Markgraf, 95 F.3d 936 (10th Cir. 1996); Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.), 904 F.2d 588 (11th Cir. 1990). In Bonded, a corporate principal caused a debtor corporation to issue a check payable to a bank

---

[2] The first transferee to receive the property is the "initial transferee." The party that receives the property from the initial transferee is the "immediate transferee," and any subsequent transferee is a "mediate transferee." Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.), 187 B.R. 315, 325 n.16 (Bankr. C.D. Cal. 1995).

8

from which the principal had secured a loan to run a horse farm business. Bonded, 838 F.2d at 891. The instructions accompanying the check directed the bank to deposit the check into the principal's personal account. Id. Ten days later, the principal instructed the bank to debit the check amount from his personal account and to pay down his loan from the bank by the same amount. Id.

The Seventh Circuit held that the bank was not the initial transferee of the corporation's check even though it was the payee. Id. at 893. "[T]he minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." Id.; see Richardson v. Preston (In re Antex, Inc.) 397 B.R. 168, 172 (B.A.P. 1st Cir. 2008); Lassman v. Fischer (In re Sunglasses & Then Some, Inc.), No. 06-11087-WCH, 2009 Bankr. LEXIS 2049, at *10 (Bankr. E.D. Mass. July 6, 2009). The bank was not a transferee until the principal transferred money to it. Prior to executing the instruction from the principal to pay down the loan, the bank was a "mere conduit." Id. at 891, 893-94. "[T]o be held to the standard of the initial transferee, a transferee must have the legal right to use the funds to whatever purpose he or she wishes, be it to invest in 'lottery tickets or uranium stocks.'" In re Anton Noll, 277 B.R. at 879, quoting Bonded, 838 F.2d at 894.

"Since the Seventh Circuit's decision in Bonded, it has become well settled that transferee status under § 550(a)(1) necessitates the transferee's 'dominion and control,' and that 'dominion and control' refers to legal, as opposed to mere physical possession of the property transferred." Id. at 879; Bowers, 99 F.3d at 156 (noting that "the dominion and control test set forth in Bonded requires *legal* dominion and control") (emphasis in original); Sec. First Nat. Bank v. Brunson (In re Coutee), 984 F.2d 138, 141 n.4 (5th Cir. 1993) (stating that "[d]ominion or control means legal dominion or control"). Here, Cronin had legal dominion and control over

the funds deposited by the Debtor into the joint account. As a joint account holder, he had the right to withdraw or use those funds at his discretion. The fact that he never did so is immaterial. Cronin had "the legal right to use the funds to whatever purpose" he wished, and that is sufficient for him to be a transferee under the Bankruptcy Code. In re Anton Noll, 277 B.R. at 879; see Lichtenstein v. Buttery (In re Computer Personalities Sys.), Nos. 01-14231, 01-1017, 2002 WL 31988134, at *7 (Bankr. E.D. Pa. Dec. 23, 2002) (holding spouses joint and severally liable for total amount of separate payments by debtor to spouses where spouses deposited checks into joint account, noting importance of right to exercise, and not actual exercise, of funds in joint account); see also O'Neal v. Sw. Mo. Bank of Carthage (In re Broadview Lumber Co.), 168 B.R. 941, 963 (Bankr. W.D. Mo. 1994), (holding wife of debtor's president was mediate transferee where president deposited debtor's funds into joint account), aff'd on other grounds, 118 F.3d 1246 (8th Cir. 1997). For these reasons, the Court concludes that Cronin was the initial transferee of the post-petition transfers.

### C. *Whether there were pre-petition transfers*

The Trustee seeks to avoid the Cash Advances as fraudulent transfers under Section 548(a)(1)(B) of the Bankruptcy Code. That provision permits the Trustee to avoid a transfer made or obligation incurred within two years prior to the commencement of the bankruptcy case if: (1) the debtor received less than reasonably equivalent value in exchange for the transfer made or obligation incurred; and (2) the debtor (a) was insolvent at the time the transfer was made or obligation incurred or became insolvent as a result thereof, or (b) was engaged in or about to engage in a business or a transaction for which her remaining property constituted an unreasonably small capital, or (c) intended to incur, or believed she would incur, debts beyond her ability to pay as those debts matured. 11 U.S.C. § 548(a)(1)(B). The Trustee has the burden

of proving each of these elements by a preponderance of the evidence. Tomsic v. Pitocchelli (In re Tri-Star Techs. Co.), 260 B.R. 319, 323 (Bankr. D. Mass. 2001).

Here, there is no dispute that the Debtor had an interest in the Cash Advances deposited into the joint bank account (Account 2915) held with Cronin. As discussed above with reference to the post-petition transfers, the Court holds that the deposit of funds into a joint account is a transfer under the Bankruptcy Code. The transfers occurred within one year of the Petition Date.

As to insolvency, a debtor is "insolvent" when the sum of the debtor's debts is greater than all of the debtor's property at a fair valuation. In re Tri-Star, 260 B.R. at 324; 11 U.S.C. § 101(32). The Trustee points to the following facts to demonstrate insolvency. The Debtor took the Cash Advances without income and in rapid succession. D. 22-2 at 9. She spent them quickly and did not repay them. Id.; see D. 22-10 (calculating that the value of the first advance was spent in 17 days, the second in 29 and the third in 33). She commenced her bankruptcy case within a few months of the third of the Cash Advances. Id. From these facts, none of which is seriously disputed by Cronin, the Court concludes that the transfers rendered the Debtor insolvent; or the Debtor was about to engage in a transaction for which her remaining property was inadequate; or she intended to incur or believed she would incur debt beyond her ability to repay as such debts matured. The proximity in time between the commencement of the Debtor's bankruptcy case and the Cash Advances demonstrates that she lacked the means to repay those advances when each was deposited into the joint account. Moreover, the fact that she took the Cash Advances in the first place indicates that she expected that the property she held at that time was inadequate to cover her expenses.

Turning to the requirement that the Debtor have received less than equivalent value for the Cash Advances, that determination must be made based on all the facts and circumstances of

the case. In re Tri-Star, 260 B.R. at 325. The Court should compare what was given with what was received, considering both direct and indirect benefits. Id. The Trustee notes that the Debtor would have received reasonably equivalent value if the Cash Advances represented her share of the household expenses. D. 22-2 at 7; United States v. Goforth, 465 F.3d 730, 736 (6th Cir. 2006) (stating that "a debtor does indeed receive reasonably equivalent value when he/she makes payments to his/her spouse . . . that are used for household expenses") (internal quotation marks omitted). The Cash Advances were comingled with funds used for household purposes, the source of which was Cronin's income. D. 22-2 at 8. The Trustee asserts, however, without citation to the record, that the Debtor used the Cash Advances "for the most part on non-household expenditures." Id. Cronin's contributions to the joint account which were used by the Debtor to pay household bills exceeded the value of the Cash Advances. D. 25 ¶ 9. The Court cannot determine from the present record whether the Debtor received equivalent value for the transfers in the form of funds provided by Cronin to pay for household expenses. See Brennan v. Slone (In re Fisher), Nos. 07-3319, 07-3320, 2008 WL 4569946, at *4 (6th Cir. Oct. 10, 2008) (affirming bankruptcy court holding that debtor received reasonably equivalent value for transfers to cohabitant where transfers were used to meet household obligations and finding significant that debtor received more money from cohabitant than she received from him over relevant time period). Because there appears to be an issue of material fact in the record, the Court cannot conclude that the Trustee is entitled to judgment as a matter of law regarding the avoidability of the Cash Advances, the pre-petition transfers.

### D. *Setoff or Recoupment*

Cronin, as the initial transferee, is strictly liable for the value of the avoidable post-petition transfers – the deposit of the Accident Settlement and the proceeds of the sale of the

Disney Condominium and the Vacation Points.  See In re Anton Noll, 277 B.R. at 878 (initial transferees are strictly liable for recovery of transferred property).  "The trustee 'may always recover from the initial transferee regardless of [that transferee's] good faith, value, or lack of knowledge of the voidability of the transfer.'"  Id. (quoting Rupp v. Markgraf, 95 F.3d 936, 938 (10th Cir. 1996)).

Cronin asserts a setoff or recoupment defense.  D. 25-1 at 19.  Cronin's paychecks were deposited into the joint accounts, and those deposits exceed the value of the avoidable transfers made by the Debtor.  Id.  Cronin argues that his liability for the Debtor's deposits should be reduced by the amount he deposited into the joint accounts.  Id. at 21.  Because he deposited more than she did, his entire liability would be extinguished.

Cronin, however, does not cite, nor can this Court locate, any authority that stands for the proposition that a strictly liable initial transferee has a defense of recoupment or setoff.  In addition, a defense of recoupment permits the crediting of reciprocal rights against each other where those rights arose from the same transaction.  In re Coastal Bus. and Equip. Sales, Inc., 330 B.R. 328, 333 (Bankr. D. Mass. 2005).  Here, not only does Cronin not have a claim against the Debtor, but his payroll deposits into the joint accounts also do not arise from the same transactions as the Debtor's deposits into the accounts.  Cronin's and the Debtor's deposits were made into the same accounts, but the sources and timing of them are different.

A setoff right differs from recoupment.  A setoff allows the crediting of reciprocal rights which arise from different transactions.  Id.  Section 553(a) of the Bankruptcy Code recognizes "any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that

arose before the commencement of the case . . . ." 11 U.S.C. § 553(a). Here, the avoidable transfers occurred after the Petition Date and are therefore not eligible for setoff.

IV. **Conclusion**

For the foregoing reasons, the Trustee's motion for summary judgment, D. 22, is ALLOWED in part and DENIED in part. The Trustee may avoid the following transfers made by the Debtor: the deposit of the Disney Condominium sale proceeds, the deposit of the Vacation Point sale proceeds and the deposit of the Accident Settlement proceeds. The Trustee may recover the Debtor's share of the value of the avoidable transfers. Cronin, as co-owner of the Disney Condominium and the Vacation Points, was entitled to half of those sale proceeds. Therefore the Trustee may recover $5,727.70 from the sale of the Disney Condominium; $1,350.00 from the sale of the Vacation Points; and $48,308.99 from the Accident Settlement proceeds. There is insufficient evidence on the present record before the Court to conclude as a matter of undisputed fact whether the Debtor received reasonably equivalent value for the Cash Advances. Cronin's cross motion for summary judgment, D. 25, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge